Matthias, J.
The resolution of the county commissioners, declaring the necessity for the levy of a tax in the sum named for the purpose of constructing, reconstructing and repairing the highways therein enumerated, was passed pursuant to *5 the provisions of Section 7419, General Code, which reads:
“When one or more of the principal highways of a county, or part thereof, have been destroyed or damaged by freshet, land-slide, wear of watercourses, or other casualty, or, by reason of the large amount of traffic thereon or from neglect or inattention to the repair thereof, have become unfit for travel or cause difficulty, danger or delay to teams passing thereon, and the commissioners of such county are satisfied that the ordinary levies authorized by • law for such purposes will be inadequate to provide money necessary to repair such damages or to remove obstructions from, or to make the changes or repairs in, such road or roads as are rendered necessary from the causes herein enumerated, they may annually thereafter levy a tax at their June session, not exceeding five mills upon the dollar upon all taxable property of the county, to be expended under their direction or by the employment of labor and the purchase of materials in such manner as may seem to them most advantageous to the interest of the county, for the construction, reconstruction or repair and maintenance of such road or roads or part thereof.”
This statute has been in force many years, and, under authority thereby conferred, taxes have been levied to meet the expense of repairing roads which had become unfit for travel by reason of previous neglect or inattention to repairs thereof, as well as to meet the expense of restoring roads destroyed or damaged by freshet, landslide, wear of watercourses, or other casualty.
*6 The important question presented in this case is not whether a valid levy of taxes has been made for any -of the purposes stated in Section 7419, General Code; but whether, in making that levy, cognizance must be taken of the Smith one per cent, law, being Sections 5649-2 to 5649-5b, General Code, and the levy made subject to the restrictions and within the limitations there prescribed.
The Smith one per cent, law was enacted in response to a popular demand for legislative action fixing a definite restriction and limitation upon the rate of tax levies, for the evident purpose of limiting the expenditure of public funds and bringing about a more just return and valuation of property for the purposes of taxation. It provides in substance that the maximum rate of taxes that may be levied for all purposes, upon the taxable property within a taxing district, shall not in any one year exceed ten mills on each dollar of the tax valuation of the taxable property of such taxing district for that year. The legislature evidently deemed it necessary to relieve from such express limitation any levies which might become imperative by reason of conditions which could not reasonably be foreseen and which could not be met by the ordinary levies; hence the enactment of Section 5649-4, General Code, which is as follows:
“For the emergencies mentioned in sections forty-four hundred and fifty, forty-four hundred and fifty-one, fifty-six hundred and twenty-nine, seventy-four hundred and nineteen and 7630-1 of the General Code, the taxing authorities of any *7 district may levy a tax sufficient to provide therefor irrespective of any of the limitations of this act.”
The primary question presented by the demurrer to the petition is whether the word “emergencies” in this section embraces all the purposes for which taxes may be levied under authority of Section 7419; or, in other words, whether Section 5649-4 must be regarded as a legislative declaration that all levies authorized by Section 7419 are emergency levies. In view of the legislative policy declared by the enactment of the Smith one per cent, law, the manifest purpose of which is to restrict the power of levying taxes and thus limit expenditure by administrative officers, statutes purporting to permit departures from that general policy and authorizing exemption therefrom will be strictly construed, and no tax should be levied in excess of the limitation definitely prescribed unless it is clearly exempted from the provisions of the restrictive statute by the legislature itself. The legislative policy plainly disclosed should not be thwarted by adverse construction of the statute or by judicial amendment of its terms, no matter how laudable the purpose may seem.
The conditions which it is claimed in this case constitute an emergency are that the principal highways enumerated, by reason of a large amount of traffic and by reason of neglect and inattention to the repairs thereof, have become unfit for travel and cause difficulty, danger and delay to teams passing thereon. Do such conditions constitute an emergency ?
*8 The word “emergency” as used in this statute is to be taken in its natural, plain, obvious and ordinary signification. The Century Dictionary defines it as follows:
(1) “A sudden or unexpected happening; an unforeseen occurrence or condition; specifically, a perplexing contingency or complication of circumstances.”
(2) “A sudden or unexpected occasion for action; exigency; pressing necessity.”
. It is difficult to conceive of a road becoming out of repair from any cause other than one of those enumerated in Section 7419, to-wit, freshet, landslide, wear of watercourses, or other casualty, or by reason of the large amount of traffic thereon, neglect or inattention to repair. Roads requiring reconstruction or repair are of two general classes, the first embracing those roads which have been destroyed or damaged by freshet, landslide, wear of watercourses, or other casualty, any one of which conditions comes within the term “emergency” as above defined; the second, those roads which by reason of the large amount of traffic thereon or from neglect or inattention to the repair thereof have become unfit for travel or cause difficulty, danger or delay to teams passing thereon. It seems quite probable that the legislature must have had this classification in mind when in Section 5649-4 it used the term “emergencies.” The condition occasioned in a manner stated in our first classification constitutes an “emergency.” It is the result of a sudden or unexpected happening, an unforeseen occurrence, an extraordinary condition; *9 while a condition arising under our second classification has to do only with injuries resulting naturally and necessarily from the use of the roads, or from mere neglect or inattention of the county commissioners, which could readily have been foreseen and cared for by the usual and ordinary methods. The one condition is extraordinary and unforeseen, the other natural, usual and to be expected. The one class constitutes an emergency, the other certainly does not. The legislature must have recognized this distinction and must have regarded some of the purposes enumerated in Section 7419 as not being emergencies, and for that reason did not exempt the entire section from the limitations of the Smith one per cent, law but did exempt only the “emergencies mentioned” therein. Some such language as “the limitations of this act shall not apply to Sections 4450, 4451, 5629 and 7419,” etc., would undoubtedly have been employed by the legislature had it intended to provide that all levies authorized by those sections should be made irrespective of the limitations of the Smith one per cent. law. Had that been the desire of the legislature it would not have chosen the specific language “emergencies mentioned,” but in , all probability would have used some broader and more comprehensive form of expression, such as above indicated.
If all the conditions enumerated in Section 7419 are to be regarded as emergencies, a board of county commissioners may designedly permit roads to become out of repair, and then treat their own failure, neglect and inattention as constituting an *10 emergency, and thus evade the express limitations of the Smith law. The word “emergencies” thus used would mean a sudden or unexpected happening or unforeseen occurrence or condition and would also mean a condition gradually created, and therefore expected and foreseen by those whose very neglect and inattention had caused it. This absurd conclusion is necessarily reached by the adoption of the theory that all of the purposes mentioned in Section 7419 are emergencies. It has been urged, however, .that the legislature evinced a design to designate as emergency levies all levies made under authority of the sections referred to in Section 5649-4, and that further inquiry into the meaning of the term “emergencies” is thereby precluded. Let us, therefore, examine the other sections enumerated in Section 5649-4.
Section 4450 authorizes municipalities to borrow money and levy a tax to meet the expenses necessary in case of the prevalence of a dangerous communicable disease.
Section 5629 provides for a special levy to meet the expense of rebuilding the county infirmary or children’s home when the same has been destroyed by fire or other casualty.
Section 7630-1, which was enacted in 1913, makes provision for the rebuilding of schoolhouses destroyed or damaged by fire or other casualty.
All will agree that the conditions set forth in these three sections are emergencies. The same cannot be said of Section 4451, General Codé, but it must be conceded that if the term “emergencies” embraces all the conditions and situations set out *11 m Section 7419 it must follow that all the purposes for which taxes are levied under Section 4451 are likewise emergencies and may be made outside of the limitation prescribed. Section 4451 provides as follows:
“When expenses are incurred by the board of health under the provisions of this chapter, upon application and certificate from such board, the council shall pass the necessary appropriation ordinances to pay the expenses so incurred and certified. The council may levy and set apart the necessary sum to pay such expenses and to carry into effect the provisions of this chapter. Such levy shall, however, be subject to the restrictions contained in this title.”
Authority is conferred, by this section to make a levy and set apart a sum necessary to carry into effect the provisions of “this chapter,” and the chapter referred to includes practically all provisions of the statutes relative to health and sanitation. An examination of that chapter discloses that the expenses there authorized to be incurred include such items as regular compensation of appointees of the board of health, and all expenses incident to the ordinary routine work of such board, including registration of births and deaths and many other items of expense which would be incurred in the ordinary administration of the board’s affairs. It necessarily follows that if all purposes for which levies are authorized by Section 4451 are to be regarded as emergencies, then the entire levy of a municipality for the health fund would be ex *12 empted from the limitations of the Smith law, which result certainly could not have been intended.
The conclusion is irresistible that, having reference to Section 4451, the legislature must have contemplated that some of the expenses required to be incurred would result from unforeseen and extraordinary conditions, constituting emergencies, while other expenses would be incurred in the usual and ordinary course of administration and could not in any sense be regarded as emergencies.
It follows that Section 5649-4, General Code, cannot be construed as a legislative declaration that all the conditions enumerated in the sections referred to therein are emergencies for which taxes may be levied in excess of the limitation prescribed; that levies made under authority of Section 7419 are exempt therefrom only when required to meet extraordinary conditions resulting from some unexpected or unforeseen occurrence or circumstance, such as the destruction of or damage to a principal highway by freshet, landslide, wear of watercourses or other casualty; and that, on the other hand, neglect or inattention of public officers to repair highways does not constitute an emergency, and a levy of taxes for the purpose of meeting the expense of reconstruction, repair and maintenance of roads which by reason of such neglect and inattention have become gradually worn out and unfit for travel, even though they cause difficulty, danger or delay, is not exempt as an emergency levy.
The levy certified by the county commissioners in the case before us is consequently not a valid levy for emergency purposes, and should not be *13 placed upon the tax list. The demurrer to the petition is sustained.

Demurrer sustained.

Johnson, Wanamaker, Newman and Jones, JJ., concur.